# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CR. NO. 06 - 026 - 03 (CKK)** |
| | ) | |
| | ) | |
| **THELMA LEONARD** | ) | |

### DEFENDANT THELMA LEONARD'S MOTION FOR SEVERANCE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Defendant, Thelma Leonard, through undersigned counsel, hereby moves, pursuant to Rule 14 of the Federal Rules of Criminal Procedure, to sever her trial from that of her co-defendants. As grounds for this Motion defendant states as follows:

1. Peter Turner, LaTanya Andrews, and Thelma Leonard are charged with conspiring between on or about December 8, 2000 and January 10, 2006 to fraudulently obtain money from the FEGLI program, a group term life insurance program established by the government, in violation of 18 U.S.C. 371. In addition, co-defendants Peter Turner and LaTanya Andrews are each charged with one count of bribery in violation of 18 U.S.C. 201.

2. The government's theory as to Ms. Leonard appears to be that she and her husband fraudulently signed as witnesses on a FEGLI designation of beneficiary form designating Peter Turner as a beneficiary entitled to receive 50% of Ms. Mayo's life insurance benefit; that between December 8, 2000 and January 2001, while Vester Mayo was either in a coma or dead Mr. Turner caused Ms. Mayo's signature and another official's signature to be forged on the form; that Latanya Andrews thereafter caused the form to be filed in Ms. Mayo's official personnel file; and that 18 months later Peter Turner issued a check from his personal checking account in the amount of $1,000 to Ms. Leonard's husband, who is now deceased; and that her husband thereafter deposited the check into a checking account he held jointly with Ms. Leonard.

- 2 -

3. Under Rule 14 of the Federal Rules of Criminal Procedure, severance of defendants is left to the sound discretion of the trial judge. See, United States v. Mardian, 546 F.2d 973 (D.C. Cir. 1976). When ruling on severance motions judges traditionally balance the prejudice to the defendant against the interests of judicial economy inherent in a joint trial. Id.

4. Ms. Leonard will be prejudiced by a joint trial with her codefendants essentially for two reasons:1) She will not be able to call her co-defendant, Peter Turner, as a witness at a joint trial to provide exculpatory testimony; and 2) She will be prejudiced from the spillover effect of the grossly disparate evidence against her codefendants. Therefore she maintains that she will be denied a fair trial unless severance is granted.

5. The Supreme Court has recognized that a defendant can be prejudiced if essential exculpatory evidence, which would be available at a separate trial, is unavailable at a joint trial. See, Zafiro v. United States, 506 U.S. 534, 539 (1993). In such a case the interests of judicial economy do not outweigh a defendant's right to a fair trial. See, United States v. Wilson, 116 F.3d 1066, 1084-85 (5th Cir. 1997). The defendant must demonstrate the exculpatory nature of the testimony, the need for the testimony, and the likelihood that the codefendant will testify if the cases are severed. See generally, United States v. Ford, 870 F.2d 729, 731 (D.C. Cir. 1989).

6. Defendant submits that at a separate trial Mr. Turner would testify that the Leonards signed the FEGLI form at the request of Vester Mayo and Peter Turner, and in Vester Mayo's presence; and that the form was signed long before Ms. Mayo's stroke and hospitalization in December 2000. He would also testify that the $1,000 check was for Mr. Leonard, not for Ms. Leonard, and was not in payment for fraudulently signing the FEGLI form as alleged. Mr. Turner is an essential witness since he is the only witness who can exculpate Ms. Leonard, particularly since her husband and Ms. Mayo are both deceased.

- 3-

7.   Secondly, the danger of prejudicial spillover to Ms. Leonard is real and substantial. The government's evidence regarding Ms. Leonard's alleged involvement in a conspiracy to fraudulently obtain monies from the FEGLI life insurance program is very thin.  Essentially, the government's evidence against her consists primarily of evidence that her signature appears on the witness line of the FEGLI benefits form, purportedly witnessing Ms. Mayo's signature - a signature the government alleges was forged.  To date, the government has not provided any evidence that Ms. Leonard's signature was placed on the form in or about December 2000, when Ms. Mayo was incapacitated or deceased as the government alleges.   Simply put, even if Ms. Leonard signed the form, there is no evidence that her signature was intended to knowingly facilitate a conspiracy to fraudulently obtain life insurance benefits or that she knowingly received any proceeds of such a conspiracy as alleged.  Virtually all of the evidence suggesting fraud is directed at the other two codefendants.  Thus there is a real danger that  Ms. Leonard could be convicted because of the spillover effect from her codefendants.  See generally, United States v. Sampol, 636 F.2d 621 (D.C. Cir. 1980).

8.   Ms. Leonard submits that since the government will have to rely almost exclusively on the "spillover" evidence from the codefendants to prove any criminal intent on her part, a joint trial will be unfairly prejudicial.   It will be extremely difficult, if not impossible, for the jurors to perform the mental gymnastics required to separate the evidence against Ms. Leonard from the evidence against the other two defendants as to her alleged involvement in such a  conspiracy. Accordingly, there is a likelihood that Ms. Leonard will be convicted primarily because of the spillover from the disparate quantum of evidence against the other defendants.  See generally, United States v. Sampol, 636 F.2d 621 (D.C. Cir. 1980).

9.   For these reasons, defendant submits that the interests of judicial economy do not outweigh her need for a separate trial.  Applying the principles enunciated in United States v. Ford, supra, and  United States v. Mardian, 546 F.2d 973, 977 (D.C. Cir. 1976), Ms. Leonard's request for severance should be granted.  United States v. Winter, 663 F.2d 1120 (1st Cir. 1981).

- 4 -

WHEREFORE, for these reasons, and any additional reasons adduced at a hearing on this motion, defendant Thelma Leonard respectfully requests this Court to grant her request for a severance from her codefendants.

Respectfully submitted,

_____/s/_____
Howard B. Katzoff, # 348292
717 D Street601 Indiana Ave., N.W.
Suite 310
Washington, D.C.  20004
(202) 783-6414
Counsel for Thelma Leonard

**CERTIFICATE OF SERVICE**

I hereby certify that this __31st___ day of ___May_____, 2006, a copy of the foregoing Motion For Severance and Points and Authorities In Support Thereof were electronically served upon Dan Petalas, Esquire and Ann Brickley, Esquire, Trial Attorneys, Public Integrity Section, United States Department of Justice,  and to all defense counsel of record.

____/s/_____
Howard B. Katzoff