IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 06-026 (CKK) |
| v. ) | |
| ) | |
| PETER R. TURNER, ) | Government's Consolidated Opposition to |
| ) | Motions of Defendant Leonard for |
| LATANYA ANDREWS, and ) | Severance and to Suppress Statements |
| ) | |
| THELMA LEONARD, ) | |
| Defendants. ) | |
| _____) | |

GOVERNMENT'S CONSOLIDATED OPPOSITION TO MOTIONS OF
DEFENDANT LEONARD FOR SEVERANCE AND TO SUPPRESS STATEMENTS

The United States of America, by and through its undersigned counsel, respectfully submits its Consolidated Opposition to the Motions of Defendant Leonard for Severance and to Suppress Statements. For the reasons stated further below, neither motion has merit, and each should be denied without any evidentiary hearing.

I.   Government's Opposition to the Motion to Suppress Statements

The defendant argues that her statements to agents pursuant to a telephone interview conducted in October 2004, and her testimony before the grand jury on July 26, 2005, should be suppressed because she had been given informal immunity and because her right to not incriminate herself was violated by virtue of the evidence in the government's possession and the coercive nature of a grand jury subpoena. Defendant's motion has no basis in law or fact, and should be summarily denied.[1]

---

[1] The government does not understand Defendant Leonard's motion to offer any legally sound basis for suppressing her statements during her telephone interview in October 2004. Nonetheless, the government submits that the same reasons that her grand jury testimony should not be suppressed apply with even more force to her telephone statements in October 2004.

     A.    <u>The Government Made No Promise of Immunity from Prosecution or that It Would Not Use the Defendant's Testimony Against Her</u>

The defendant alleges that in a discussion prior to her grand jury testimony she was told that she was not a target,[2] that the government was not interested in her, and that if she told the truth she would have nothing to worry about. Although the United States contends that the defendant's allegations are not accurate, even taking them as true <u>arguendo</u>, as a matter of law they are insufficient to obtain the relief the defendant seeks here.

For a defendant to enforce an alleged informal grant of immunity, the defendant must first demonstrate that an immunity agreement was actually reached, that the defendant performed under that agreement, and that the government breached. <u>United States v. McHan</u>, 101 F.3d 1027, 1034 (4th Cir. 1996) (citing <u>Rowe v. Griffin</u>, 676 F.2d 524, 527-28 (11th Cir. 1982)). To prove that an agreement existed, the defendant "must demonstrate at least a meeting of the minds that the government would refrain from further prosecuting him in exchange for cooperation." <u>McHan</u>, 101 F.3d at 1034. As in other cases in which questions of contract formation are presented, the court applies an objective standard to the circumstances that allegedly gave rise to an agreement; that is, the claimed subjective belief of the defendant is irrelevant to the analysis. <u>United States v. Dudden</u>, 65 F.3d 1461, 1467 (9th Cir.1995) ("We interpret informal immunity

---

[2] Defendant Leonard is incorrect when she asserts that she was a "target" when she testified before the grand jury in July 2005. She was not. A target is "a person as to whom the prosecutor or the grand jury has substantial evidence linking him or her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant." <u>See</u> United States Attorney's Manual § 9-11.151. Accordingly, a witness is not a "target" unless and until there is substantial evidence of the defendant's guilt and, more importantly, the prosecutor on the case has determined, to his or her own satisfaction, that prosecution not only is warranted but is ready to proceed in light of all the facts and circumstances. For that reason, none of the defendants were in fact "targets" of the grand jury's investigation in July 2005. Finally, the law is well settled that internal policies of the Department of Justice concerning "subjects" and "targets" do not create any enforceable rights, and any suggestion by defendant Leonard to the contrary would not be well taken. <u>See</u> <u>United States v. North</u>, 1988 WL 148491 at *2 n.2 (D.D.C. Nov. 10, 1988) (unpublished) (collecting cases).

agreements using ordinary contract principles."); Northland Capital Corp. v. Silver, 735 F.2d 1421, 1426 n.7 (D.C. Cir. 1984) ("The principle that objective manifestation of intent is controlling in contract formation is very well established.")

As a matter of law, the statements that the defendant alleges the government made in this case -- even were they accepted as true -- are not ambiguous, nor can they objectively be construed as a promise by the government to bind itself not to prosecute the defendant or use her testimony against her in exchange for her waiver of rights. According to the defendant herself, there was no mention of the word immunity, no discussion of whether she would or would not be subject to prosecution, and no discussion of whether her statements would not be used against her in the future. Further, as the defendant must admit, she was explicitly warned of her rights on the record -- her right not to incriminate herself, her right to counsel, and the risk that she could be prosecuted if her sworn testimony to the grand jury was false -- before she provided any testimony to the grand jury. See Attachment A. Under the objective standard of contract formation, there is accordingly no basis in law for the defendant's contention that she reasonably believed she received a promise of immunity, nor is there any objective basis for finding that such a meeting of the minds between her and the government occurred.

Nor do the cases cited by defendant support her claim that she is entitled to obtain the benefit of an immunity bargain that was never struck. At the outset, the defendant is incorrect when she claims the cases she cites stand for the proposition that the so-called doctrine of "equitable" immunity allows a court simply to form an immunity agreement by implication. See Defendant's Motion to Suppress at 4. Rather, it is essentially a doctrine of specific performance. As discussed above, the defendant must first prove that an agreement was entered into, based on the objective understanding of the circumstances giving rise to the alleged agreement, and that the government breached that putative agreement after the defendant performed. The doctrine is

3

therefore merely an acknowledgment that the Court may enforce informal -- albeit express -- immunity agreements that were not the result of "formal" statutory immunity conferred under 18 U.S.C. § 6002.

Indeed, the defendant's cases make this point clear, and undermine her claim for relief. In United States v. Plummer, 941 F.2d 799 (9th Cir. 1991), the government provided a letter to the defendant expressly promising him immunity in exchange for his cooperation. There was no question whether an immunity agreement was formed; the only issue was whether the immunity agreement provided the defendant with use or transactional immunity.

In United States v. Carter, 454 F.2d 426 (4th Cir. 1996), the defendant pleaded guilty, and his counsel provided a sworn statement that he conducted plea-bargaining with a prosecutor in the District of Columbia and obtained for the defendant an unambiguous promise of non-prosecution in any other jurisdiction in exchange for the defendant's agreement to cooperate and plead guilty. Id. at 427. Indeed, when sentenced pursuant to that plea deal, the extent of the defendant's cooperation was made known to the sentencing judge. Id. Nonetheless, the defendant was subsequently charged in another District for charges related to the plea agreement. Even given the strong factual showing of the existence of an unambiguous agreement by the sworn statement of counsel, who was present when the promise was made, and the other corroborating evidence, the Court of Appeals remanded for a determination of whether any such promise was made and what the scope of the agreement was. Carter accordingly does not provide any authority that a defendant can obtain "equitable" immunity where her own allegations do not demonstrate that any immunity promise was made. Nor do the facts in Carter concerning the existence of an immunity provision in a plea agreement even slightly resemble the circumstances recited post hoc by this defendant on information and belief in her motion.

Defendant Leonard also cites the district court's opinion in Rowe v. Griffen, 497 F. Supp. 610 (M.D. Ala. 1980). In that case, the State of Alabama charged a former cooperator with murder years after he provided his cooperation against others involved in the same crime. Id. at 612. Among other things, the defendant testified at several trials about his involvement in the murder, and was relocated and provided with a new job and identification by the FBI for his protection as a result of his extensive cooperation. Further, the prosecutor on the prior case stated that the defendant was offered immunity. The only question before the court was whether that admitted agreement extended beyond the term of office of the then-sitting State Attorney General. Id. at 612 n.3. The court found that the defendant clearly demonstrated that an unambiguous agreement not to prosecute at any time had been made, and that it induced the defendant to provide his substantial cooperation. The court noted that his finding was based also on the fact that the FBI took great effort to secure the defendant following his cooperation. Id. at 613. That decision does not support the defendant's argument here. It does not create a rule of law whereby a defendant can be cloaked in "equitable" immunity when her own allegations concerning the government's alleged statements do not demonstrate that any promise of use or transactional immunity was ever made -- especially in light of the warnings regarding her rights and the potential for prosecution that she undeniably was provided before she gave her testimony. See Attachment A.

In addition, because defendant Leonard in fact was not truthful when she testified before the grand jury, she cannot show that she performed her part in any putative agreement with the government, even assuming such an agreement could reasonably be construed to exist based on her allegations. The grand jury in this case charged her with conspiracy to obstruct its investigation. Among other overt acts in furtherance of the conspiracy, the grand jury found probable cause to believe that the defendant provided false and misleading information during

5

her testimony. See Indictment ¶ 25. Accordingly, she did not fulfill her part of the alleged bargain that she now attempts to enforce against the government.

In sum, even accepting as true the defendant's allegations, those circumstances do not satisfy the defendant's obligation to demonstrate that a meeting of the minds occurred, or that a reasonable person would believe that the government promised either immunity from prosecution or from the use of her statements against her. The undisputed fact that she was formally advised of her rights in the grand jury, including the possibility of prosecution for providing false testimony, further undermines her claim that any such agreement was formed between the parties. Because the defendant's allegations, even if true, would be legally insufficient, the court should deny her motion without an evidentiary hearing.

B.     Leonard's Fifth and Sixth Amendment Rights Were Not Violated

The defendant also argues that her testimony in the grand jury was taken in violation of her Fifth Amendment privilege against self-incrimination because of the coercive nature of grand jury proceedings, and claims that she did not voluntarily waive the privilege when informed of her rights in the grand jury. Defendant's position is unsupportable.

As the defendant must concede, the Supreme Court has not held that grand jury testimony is sufficiently coercive as to make her statements involuntary. Def. Mot. Suppress at 6. She nonetheless cites to United States v. Washington, 431 U.S. 181 (1977) for the proposition that the grand jury is an inherently coercive body. However, immediately following the language the defendant cites in Washington, the Court explained that it "has not decided that the grand jury setting presents coercive elements which compel witnesses to incriminate themselves. Nor have we decided whether any Fifth Amendment warnings whatever are constitutionally required for grand jury witnesses . . . ." Id. at 186 (emphasis added).

6

Of course, in this instance, the defendant was warned. Without citing any authority, however, the defendant asserts that the Fifth and Sixth Amendment warnings provided to her at the outset of her testimony were insufficient to overcome the coercive nature of the proceedings. Def. Mot. Suppress at 8. It is therefore revealing that, in Washington, the Court concluded that the defendant's statements in the grand jury were not coerced precisely because the witness received warnings before testifying: "even assuming the grand jury setting exerts some pressures on witnesses generally or on those who may later be indicted, the comprehensive warnings respondent received in this case plainly satisfied any possible claim to warnings." Id. at 186. Likewise, the expansive warnings provided to defendant Leonard in this case at the outset of her testimony overcame any claimed coerciveness that may have been inherent in the grand jury process. See Attachment A. As the Supreme Court has long made clear, if a defendant "desires the protection of the privilege, he must claim it or he will not be considered to have been 'compelled' within the meaning of the Amendment." Minnesota v. Murphy, 465 U.S. 420, 427 (1984).

For much the same reason, the defendant's decision to testify in the grand jury and thereby waive her privilege was knowing, intelligent, and voluntary. That is, she was advised of her Fifth and Sixth Amendment rights, clearly stated that she understood them, and nonetheless decided to answer questions instead of invoking those rights. Nothing further was required of the government, and it is fully entitled to use that testimony in this prosecution. The defendant's motion to suppress should accordingly be denied.

II.   Government's Opposition to the Motion to Sever

Leonard moves to sever her trial from her co-defendants on two grounds. First, Leonard argues that, if the case were severed, she would be able to call Turner as a witness who would provide exculpatory evidence about Leonard's signature on the FEGLI form. Second, Leonard

7

argues that the evidence against her co-defendants is substantially stronger. Leonard argues that the evidence presented against Turner and Andrews will unduly prejudice her before the jury, and that this prejudice may result in the jury convicting Leonard on evidence unrelated to her conduct. The government respectfully submits that Leonard is wrong on both grounds. Leonard has not established that Turner would in fact testify on her behalf, nor has she provided sufficient reason why it is in the interests of justice to sever the case.

A.   Defendant's Motion for Severance Should be Denied

There is a strong preference in the federal system for joint trials of defendants who are indicted together. See, e.g., Zafiro v. United States, 506 U.S. 534, 537 (1993); United States v. Gbesimola, 225 F.3d 753, 760 (D.C. Cir. 2000). As the Supreme Court has stated, "[j]oint trials 'play a vital role in the criminal justice system.' . . . They promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" Zafiro, 506 U.S. at 537 (quoting Richardson v. Marsh, 481 U.S. 200, 209-10 (1987)). In this Circuit, joinder has been held "presumptively proper where the alleged acts are part of the same series of acts or transactions." United States v. Simmons, ___ F. Supp.2d ___ 2006, 02-CR-45 (RCL), WL 1217281 at * 25 (D.D.C. May 2, 2006).

Under Federal Rule of Criminal Procedure 14, severance should not be granted unless "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. "Moreover, Rule 14 does not require severance even if prejudice is shown; rather it leaves the tailoring of relief to be granted, if any, to the district court's sound discretion." Zafiro, 506 U.S. at 538-39.

Thus, a properly joined defendant bears a "heavy burden" in seeking a separate trial, and must establish that "joinder would violate [her] fair trial rights." United States v. Edelin, 118 F.

8

Supp. 2d 36, 41 (D.D.C. 2000), (citing United States v. Spitler, 800 F.2d 1267, 1271 (4th Cir. 1986); United States v. Carpentier, 689 F.2d 21, 27 (2d Cir. 1982)); see also United States v. Simmons, ___ F. Supp.2d ___ 2006, 02-CR-45 (RCL), WL 1217281 at * 25 (D.D.C. May 2, 2006) (denying severance in conspiracy case where "defendant is not entitled to severance merely because he might have a better chance of acquittal if he were tried separately").

      1.      Leonard has Not Shown that Turner Would Provide Exculpatory Testimony

Leonard alleges that if her case were severed, Turner would provide exculpatory evidence to show that Leonard signed the FEGLI form at Mayo's request and in her presence before Mayo was hospitalized in 2000. Leonard also alleges that Turner would testify that the $1,000 check was for Mr. Leonard and was not payment for fraudulently signing Mayo's FEGLI form. See Defendant's Motion for Severance ¶ 6. Leonard does not indicate whether Turner will explain why Mayo and the authorizing agency official's names were forged.

To establish a *prima facie* case for severance on the ground urged here by Leonard, the movant must demonstrate: (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) the exculpatory nature and effect of the testimony; and (4) the likelihood that the co-defendant will testify if the cases are severed. Once the movant makes that threshold showing, the trial court must then: (1) examine the significance of the testimony in relation to the defendant's theory of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider the effects on judicial administration and economy; and (4) give weight to the timeliness of the motion. United States v. Ford, 870 F.2d 729, 731. (D.C. Cir. 1989). See also United States v. Wilson, 116 F.3d 1066, 1084-85 (5th Cir. 1997 ); United States .v Edelin, 118 F. Supp. 2d 36, 44 (D.D.C. 2000).

Leonard provided an overview of what she believes Turner would say if called to testify at a severed trial. If Leonard's representation is accurate, Turner would testify that Mayo was

9

present when the FEGLI form was signed, and that it was signed prior to Mayo's hospitalization in December 2000. According to Leonard, Turner would also deny that the $1,000 check he paid to Mr. Leonard was a payment made in exchange for the Leonards' cooperation in the conspiracy. The Court could find, therefore, that there is a bona fide need for the testimony and that the proffered testimony may exculpate Leonard in the eyes of the jury. Turner has not, however, indicated that he is willing to testify, nor has Leonard shown that Turner's claims would withstand cross-examination. Without showing that Turner will testify, Leonard cannot make a prima facie showing that Turner's testimony would actually be available at a separate trial. "The Court cannot engage in flights of fancy where a defendant can force severance of his case by asserting that his co-defendant would testify on his behalf." Edelin, 118 F. Supp. 2d at 45.

Even assuming arguendo, that Leonard could make a prima facie case for severance based upon Turner's potentially exculpatory testimony, Leonard's charges should not be severed from those of her co-defendants. In examining the remaining Ford factors, Leonard's motion fails when considered in light of the third factor - the effect of severance on judicial administration and economy.

The evidence that will be introduced to prove the fraudulent scheme will also be used to prove the conspiracy count in which Leonard is charged. As such, if severance is granted, the same witnesses will be called in order to establish the conspiracy of which all three defendants were a part. Some of the government's witnesses will travel from out-of-state, leaving behind personal responsibilities and testifying at their own inconvenience. At least one witness will be a member of Mayo's family, who will have to re-live Mayo's unfortunate death in order to provide testimony. In effect, Leonard is requesting that the Court empanel a jury to hear the same evidence, make the same evidentiary rulings, and subject witnesses to direct and cross-

10

examination on the same subject twice. This is an undue burden on the Court's and the government's resources, particularly when weighed against the *potential* testimony of a co-defendant.

      2.      <u>Leonard's Claim of Prejudicial Spillover Does Not Justify Severance</u>

Leonard also claims that she will be prejudiced by being tried along with her two co-defendants because the evidence is stronger against her co-defendants. It is insufficient for a defendant to claim that more proof will be offered at trial against other defendants, or that the defendant played a small role compared to others charged in the indictment. "[D]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." <u>United States v. Kenny</u>, 883 F. Supp. 869, 878 (E.D.N.Y. 1995) (quoting <u>United States v. Chang An-Lo</u>, 851 F.2d 547, 557 (2d Cir. 1988)); <u>see also</u> <u>United States v. Eiland</u>, 406 F. Supp. 2d 46, 54 (D.D.C. 2005) (severance denied even though charges against co-conspirators included crimes of violence). While arguing that the government's evidence against her is "thin," Leonard fails to acknowledge grand jury testimony in which she admitted that she signed the FEGLI form as a witness to Mayo's signature when Mayo had not signed the form. The government's evidence will further show that Mayo *never* signed the FEGLI form and that, in fact, her signature, along with Mr. Lebron's, were forged. This evidence, taken with the $1,000 check paid to Leonard's husband after Turner received the FEGLI benefits, is ample evidence of Leonard's role in the conspiracy, and must be brought out in conjunction with evidence that will show Andrews' and Turner's roles in the conspiracy. Turner's and Andrews' conduct in this case is not distinct from Leonard's, nor is it substantially more egregious. Presenting all of the evidence together will not result in prejudice to Leonard, nor will the evidence confuse the jury about Leonard's relative level of culpability.

11

Indeed, there is ample reason why the preference for joint trials should be honored in the instant case. Leonard is charged in the conspiracy count, and the government will seek to prove that her charged conduct was committed in furtherance of the overarching conspiracy. The evidence of the conspiracy and of the three defendant's roles therein will therefore have to be admitted in a separate trial, necessitating the repetitive presentation of the same witnesses and evidence at a second trial. Furthermore, the evidence regarding the substantive bribery charge is intertwined with the evidence regarding the conspiracy to commit bribery. Thus, the government will utilize the same evidence and the same witnesses to establish each of the crimes charged in the indictment. Even if, on balance, this evidence bears out that Turner and Andrews played a larger role in the conspiracy than did Leonard, and to the extent that the evidence does not make the defendants' respective roles clear, a curative jury instruction will suffice.

Further, where allegedly prejudicial evidence against a co-defendant would be admissible against the moving defendant even at a separate trial, the movant is not entitled to severance. See United States v. Gbesimola, 225 F.3d 753, 760 (D.C. Cir. 2000) (denial of severance upheld where the same evidence would have been presented at a severed trial); United States v. Salameh, 152 F.3d 88, 115 (2d Cir. 1998) (admission of bombing co-defendant's "holy war" materials did not result in prejudicial spillover where materials would have been admissible in a separate trial against the moving defendant as a member of the bombing conspiracy); United States v. Edelin, 118 F. Supp. 36, 43 (D.D.C. 2000) ("[s]everance is not appropriate merely because some co-conspirators were more active in the conspiracy, nor because some co-conspirators played a more central role"). That is precisely the situation here. Turner may be the "mastermind" of this small conspiracy, and Andrews' conduct was necessary to enable Turner to have the FEGLI form placed in Mayo's personnel folder, but it is Leonard who signed the FEGLI form as a "witness" to Mayo's signature on a form Mayo did not sign. Regardless of

the severity of the conduct of each defendant, the actions of the co-conspirators is relevant for the government to prove that Leonard was involved in the conspiracy, and introducing this evidence will result in no violation of trial rights to Leonard..

If the Court were to determine that the government presented evidence against Andrews and Leonard that appeared to prejudice Leonard, an appropriate jury instruction will cure any potential harm.  Any risk of "spillover" prejudice arising from differing levels of culpability and proof in multi-defendant cases is remedied by judicial instructions that each defendant must be considered separately, and that the proof against each defendant must be weighed individually. "Other, less intrusive remedies such as additional jury instructions are preferred over severance." United States v. Simmons, ___ F. Supp.2d ___ , 02-CR-45 (RCL), 2006 WL 1217281 at * 25 (D.D.C. May 2, 2006) . See also Zafiro, 506 U.S. at 540-41.

In conclusion, Leonard has not satisfied the heavy burden of establishing prejudice so severe as to constitute a miscarriage of justice.  Thus, her motion should be denied and the Court should issue limiting instructions at the appropriate time, if necessary.

WHEREFORE, the government respectfully requests that the Court deny the defendant's motion to suppress her grand jury testimony and Leonard's motion to sever her trial from the co-defendants.

Dated: June 16, 2006

        Respectfully submitted,

        ANDREW LOURIE,
        Acting Chief


           /s/  Daniel A. Petalas
        Daniel A. Petalas
        DC Bar No. 467908
        Ann C. Brickley
        Trial Attorneys
        Public Integrity Section
        Criminal Division
        United States Department of Justice
        10th Street and Constitution Avenue, NW
        Washington, DC 20530
        202-514-1412
        202-514-3003 (facsimile)
        Dan.Petalas@usdoj.gov

CERTIFICATE OF SERVICE

The undersigned counsel for the government hereby certifies that he caused a true and correct copy of the foregoing to be served upon the following counsel of record by electronic mail at the addresses listed below through the automated electronic case filing system of the Court, this 16th day of June, 2006:

James W. Rudasill, Jr., Esq.
717 D. Street, NW, Suite 310
Washington, DC 20004
rudasilljr7@aol.com
Counsel for Peter R. Turner

Nathan I. Silver, Esq.
P.O. Box 5757
Bethesda, MD 20824
nisquire@aol.com
Counsel for LaTanya Andrews

Howard Katzoff, Esq.
717 D. Street, NW, Suite 310
Washington, DC 20004
katzoffh@aol.com
Counsel for Thelma Leonard

    /s/ Ann C. Brickley
Ann C. Brickley
Trial Attorney