UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>PETER R. TURNER, LATANYA ANDREWS, and THELMA LEONARD,<br><br>    Defendants. | Crim. Action No. 06-0026 (CKK) |

**MEMORANDUM OPINION**
(July 12, 2006)

Currently before the Court is Defendant Thelma Leonard's Motion for Severance and Memorandum of Points and Authorities in Support Thereof. Upon a searching examination of Defendant Leonard's motion, the Government's Opposition, the relevant case law, and the entire record herein, the Court shall deny Defendant Leonard's Motion for Severance at this time.

**I: BACKGROUND**

On January 31, 2006, Peter R. Turner, LaTanya Andrews, and Thelma Leonard were indicted in this district in a three-count indictment charging each of them with conspiracy to fraudulently obtain money from the Federal Employees Group Life Insurance ("FEGLI") program, a group term life insurance program established by the government, in violation of 18 U.S.C. § 371 ("Conspiracy to Commit Offense or to Defraud United States"), and Andrews and Turner each were also charged with one count of bribery in violation of 18 U.S.C. § 201(b) ("Bribery of Public Officials and Witnesses"). Andrews was a payroll technician for the Department of Veterans Affairs Medical Center (hereinafter, "DVAMC"), Turner was a volunteer driver for the DVAMC, and Leonard was an associate of Turner. *See* Indictment ¶¶ 1-3. The Indictment was unsealed on February 8, 2006.

The Indictment alleges that Turner, Andrews, and Leonard conspired between December 8, 2000 through on or about January 10, 2006, *id.* ¶ 7, to file a forged FEGLI form falsely designating Turner as a one-half life-insurance beneficiary for Vester Mayo, a fellow employee of the DVAMC and his former girlfriend, *id.* ¶ 5, in Mayo's official personnel folder, *id.* ¶¶ 9-10. Andrews allegedly used her position as an employee of the DVAMC to cause the forged FEGLI form to be included in Mayo's official DVAMC personnel folder. *Id.* ¶ 12. Leonard allegedly assisted the conspiracy by signing the forged beneficiary form as a signature witness knowing that it had not been signed by Mayo. *Id.* ¶ 11.

On or about December 8, 2000, while still an active employee of the DVAMC and while insured under the FEGLI program, Mayo suffered a stroke and was hospitalized. *Id.* ¶ 6. Shortly thereafter, Mayo lapsed into a coma and died on or about December 22, 2000. *Id.* Following her death and the alleged completion of the conspiracy's plans, Turner then filed a claim with the FEGLI program, obtaining a payment of approximately $20,500. *Id.* ¶ 21. Allegedly in return for their loyalty and assistance in the scheme, Turner paid Andrews $1,000 from the proceeds on or about February 7, 2001, *id.* ¶ 22, and later – on or about July 16, 2002 – paid another $1,000 to Leonard's spouse, who is now deceased, for the Leonards' cooperation, *id.* ¶ 23.

Following Defendants' arraignments in February 2006, this Court held a series of status conferences with Defendants present. Following the April 6, 2006 status conference, the Court set a schedule for various pre-trial filings, including any motions to suppress or motions for severance. Pursuant to the Court's schedule, Defendant Leonard has submitted a motion for severance, to which the Government has filed an Opposition.

## II: DISCUSSION

Defendant Leonard's current motion requests that she be severed from her co-defendants and

provided a separate trial under Federal Rule of Criminal Procedure 14. *See* Def. Leonard's Mot. for Severance at 2, ¶ 4. In general, it is preferred for defendants who are named in the same indictment to be tried jointly. *See Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *United States v. White*, 116 F.3d 903, 916 (D.C. Cir. 1997) ("[t]he Supreme Court has found a general preference for joint trials in the federal system, based on the interests of efficiency and a reduced risk of inconsistent verdicts") (citation omitted); *United States v. Gibbs*, 904 F.2d 52, 56 (D.C. Cir. 1990) ("This court, however, has repeatedly declared that joint trials may be preferred, given the heavy and increasing criminal load in our courts.") (citing *United States v. Manner*, 887 F.2d 317, 324 (D.C. Cir. 1989)). Joint trials are preferred for a variety of reasons, including judicial efficiency and consistent verdicts, as the Supreme Court explained in *Buchanan v. Kentucky*, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987):

> Underlying the Commonwealth's interest in a joint trial is a related interest in promoting the reliability and consistency of the judicial process, an interest that may well benefit the noncapital defendant as well. In joint trials, the jury obtains a more complete view of all the acts underlying the charges than would be possible in separate trials. From such a prospective, it may be able to arrive more reliably at its conclusions regarding the guilt or innocence of a particular defendant and to assign fairly the respective responsibilities of each defendant in sentencing.

*Id.* at 418, 107 S.Ct. 2906; *see also Zafiro*, 506 U.S. at 537 ("[j]oint trials 'play a vital role in the criminal justice system.' . . . They promote efficiency and 'serve the interests of justice by avoiding scandal and inequity of inconsistent verdicts.'") (quoting *Richardson v. Marsh*, 481 U.S. 200, 209-10, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987)).

The preference for a joint trial is even stronger in this Circuit in cases involving multiple defendants faced with a conspiracy charge – i.e., "where . . . the respective charges require presentation of much the same evidence, testimony of the same witnesses, and involve two [or more]

defendants who are charged, *inter alia*, with participating in the same illegal acts." *United States v. Ford*, 870 F.2d 729, 731 (D.C. Cir. 1989) (Starr, J.)); *see also United States v. Simmons*, --- F. Supp. 2d ----, Nos. Crim. 157(RCL), 02-45(RCL), 2006 WL 1217281, at *25 (D.D.C. May 2, 2006) (noting that joinder in this Circuit has been held "presumptively proper where the alleged acts are part of the same series of acts or transactions"). "'The preference for a joint trial of multiple defendants in conspiracy cases reflects the sound policy of joinder where charges may be proven with substantially the same evidence.'" *United States v. Edelin*, 118 F. Supp. 2d 36, 40 (D.D.C. 2000) (quoting *United States v. Aiken*, 76 F. Supp. 2d 1346, 1352 (S.D.Fla. 1999)). "'Rarely, if ever, will it be improper for co-conspirators to be tried together.'" *Id.* (quoting *United States v. Jackson*, 64 F.3d 1213, 1217 (8th Cir. 1995) (citations omitted)).

Defendants here are charged with conspiracy – i.e., conspiracy to commit offense or defraud the United States by fraudulently obtaining money from the FEGLI program in violation of 18 U.S.C. § 371. *See* Indictment ¶¶ 1-27 (Count I – Conspiracy). This conspiracy charge provides "a common thread that ties all of the defendants and charges together." *Edelin*, 118 F. Supp. 2d at 39 (citing *United States v. Morales*, 868 F.2d 1562, 1568-69 (11th Cir. 1989) ("Joinder of multiple defendants is proper whenever there is a 'common thread' between the actions charged against them."); *United States v. Simon*, 839 F.2d 1461, 1472 (11th Cir. 1988) ("[J]oinder of the defendants for trial is proper where the indictment charges multiple defendants with a single conspiracy and also charges some of the defendants with substantive counts arising out of the conspiracy.")).

However, Rule 14 of the Federal Rules of Criminal Procedure provides, in pertinent part, that:

> [i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder by the trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Fed. R. Crim. P. 14. Rule 14 provides the Court with "great latitude to sever defendants." *United States v. Brown*, 16 F.3d 423, 432 (D.C. Cir. 1994). "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." *Zafiro*, 506 U.S. at 541, 113 S.Ct. 933. "Ruling on a Rule 14 motion before trial requires the trial judge to anticipate the evidence and events of a future trial. The presumed benefits of a joint trial must be weighed against the potential for harm to the integrity of the trial process." *United States v. McVeigh*, 169 F.R.D. 362, 364 (D. Colo. 1996). The Supreme Court has held that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the Defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933. Since the "risk of prejudice will vary with the facts in each case," *id.*, the decision to sever must be on a case-by-case basis. However, "Rule 14 does not require severance even if prejudice is shown; rather it leaves the tailoring of relief to be granted, if any, to the district court's sound discretion." *Id.* at 538-39, 113 S.Ct. 933.

In this case, Defendant Leonard makes two specific arguments in favor of severance of her trial from that of Defendants Turner and Andrews: (1) "[s]he will not be able to call her co-defendant, Peter Turner, as a witness at a joint trial to provide exculpatory testimony," *see* Def. Leonard's Mot. for Severance at 2, ¶ 4; and (2) "[s]he will be prejudiced from the spillover effect of the grossly disparate evidence against her codefendants," *id*. At this stage of the proceeding, the Court finds that trying Defendants Turner, Andrews, and Leonard together would not present a

5

"serious risk" to any specific trial right held by Defendant Leonard. *Zafiro*, 506 U.S. at 539-40, 113 S.Ct. 933 ("it is well settled that defendants are not entitled to a severance because they may have a better chance of acquittal in separate trials"). As explained below, each of Defendant Leonard's contentions is without merit, and, with the appropriate instructions, the jury will be able to consider the guilt or innocence of each co-defendant independently.

   *A.  Defendant Leonard's Exculpatory Testimony Claim*

   Defendant Leonard alleges that if her case were severed, her current co-defendant Turner would provide exculpatory evidence to show that Leonard actually signed the FEGLI form at Mayo's request and in her presence before Mayo was hospitalized in 2000. *See* Def. Leonard's Mot. for Severance at 2, ¶ 6. Leonard also alleges that Turner would testify that the $1,000 check was for Mr. Leonard and was not payment for fraudulently signing Mayo's FEGLI form. *Id.* Leonard stresses that Turner is an essential witness "since he is the only witness who can exculpate Ms. Leonard, particularly since her husband and Ms. Mayo are both deceased." *Id.* Leonard does not indicate whether Turner will explain why Mayo and the authorizing agency official's names were forged. *See* Indictment ¶ 17.

   The relevant severance inquiry was first set out by this Circuit in *United States v. Ford*, 870 F.2d 729 (D.C. Cir. 1989) (Starr, J.); *accord United States v. Washington*, 12 F.3d 1128, 1133 (D.C. Cir. 1994), *cert. denied*, 513 U.S. 828, 115 S.Ct. 98, 130 L.Ed.2d 47 (1994). In order to determine whether a defendant has established a *prima facie* case on the ground of the necessity of securing the testimony of a co-defendant, the movant must prove: "(1) a bona fide need for the testimony; (2) the substance of the testimony; (3) the exculpatory nature and effect of the testimony; and (4) the likelihood that a co-defendant will testify if the cases are severed." *Id.* at 731. If the

defendant fails to meet this threshold, severance is not required. Only if the defendant makes an adequate showing must the trial Court then: "(1) examine the significance of the testimony in relation to the defendant's theory of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider the effects on judicial administration and economy; and (4) give weight to the timeliness of the motion." *Id*. A defendant must meet these stringent standards because, as the D.C. Circuit has noted, "Rule 14 [should not be read] as a mechanism for alleged co-conspirators to control the order in which they are tried." *Id*. (citations and internal quotation marks omitted).

Upon an analysis of Defendant Leonard's severance motion in light of the relevant factors, it is clear that her motion is without merit at this time. Leonard has provided an overview of what she believes Turner would say if called to testify at a severed trial. *See* Def. Leonard's Mot. for Severance at 2, ¶ 6. If Leonard's representation is accurate, Turner would testify that Mayo was present when the FEGLI form was signed, and that it was signed prior to Mayo's hospitalization in December 2000. *Id*. According to Leonard, Turner would also deny that the $1,000 he gave to Leonard's spouse (and ultimately placed into the Leonard's joint bank account) was a payment made in exchange for the Leonards' cooperation in the conspiracy. *Id*. Based on this proffer, it is possible that there is a bona fide need for the testimony and that the proffered testimony may exculpate Leonard in the eyes of the jury. *See Edelin*, 118 F. Supp. 2d at 44 (concluding that the proposed testimony would likely meet these same two criteria).

However, Leonard's attempt to meet the remaining *prima facie* requirements set out in *Ford* flounders due to the fact that she has not indicated that Turner is willing to testify on her behalf, nor has she established that his proffered claims would withstand cross-examination. As Judge Royce C. Lamberth noted in *Edelin*,

7

> The Court cannot engage in flights of fancy where a defendant can force severance of his case by asserting that his co-defendant would testify on his behalf. The reality of the situation is very far from Earl Edelin's claims. In order for Tommy Edelin to testify at his father's trial, he would be subjecting himself to cross-examination. The likelihood that he would even consider doing so before his own case has come to a final judgment and all appeals have been exhausted is infinitesimally small. Even assuming that Tommy Edelin would testify, the Court rules that severance is not warranted when the proposed testimony of Tommy Edelin would be suspect, self-serving, and of potentially insignificant probative value.

*Id*. at 45. The Court faces a similar situation in this case. Here, Turner himself has submitted no affidavit and made no formal offer to testify in a severed trial for Leonard, especially where that trial could well occur before his own and/or before his appeals have been exhausted. Moreover, Leonard also has failed to establish that the proffered exculpatory testimony could reasonably survive impeachment, especially where Leonard herself made certain statements to the grand jury that could possibly be used against her. *See Ford*, 870 F.2d at 732-33 ("This conclusion is supported by another factor, namely, the extent to which the proffered exculpatory testimony could be impeached.") (citation omitted). While Leonard might desire for Turner to testify and expect him to repeat the proffered testimony, the fact is that at this point, Leonard has failed to "demonstrate a *reasonable probability* that the proffered testimony would be forthcoming." *Id*. at 731 (citing *United States v. Parodi*, 703 F.2d 768, 779 (4th Cir. 1983)).

Even assuming *arguendo* that Leonard could make out a *prima facie* case under the initial *Ford* factors, the Court must evaluate the remaining considerations prior to ordering a severance. *Id*. at 731. While the proffered testimony would certainly help support Leonard's theory of the case and harm her if excluded, and Leonard's motion certainly was timely, her motion would encounter difficultly in light of the third factor – the effect of severance on judicial administration and economy. *Id*. According to the Government, the evidence that will be introduced to prove the fraudulent scheme will also be used to prove the conspiracy count in which Leonard is charged. As

8

such, if severance is granted, the same witnesses will be called in order to establish the conspiracy of which all three defendants were allegedly a part. Some of the Government's witnesses will travel from out-of-state, leaving behind personal responsibilities and testifying at their own inconvenience. At least one witness will be a member of Mayo's family, who will have to re-live Mayo's unfortunate death in order to provide testimony. Given these considerations, it is clear that Leonard is effectively requesting that this Court empanel a jury to hear the same evidence, make the same evidentiary rulings, and subject witnesses to direct and cross-examination on the same subject twice. Such a request may well be an undue burden on this Court's and the Government's resources, particularly when weighed against the *potential* testimony of a co-defendant. *See Edelin*, 118 F. Supp. 2d at 45 (noting that even assuming *arguendo* that the defendant met the *prima facie* test, severance would be inappropriate due to judicial administration and economy concerns). Accordingly, even if Leonard could establish a *prima facie* case for severance under the *Ford* factors, which she cannot at this time, the Court may reasonably, within its discretion, decide that such severance is inappropriate for reasons of judicial administration and economy. At this point, Leonard's severance motion lacks foundation, as the balancing of the potential prejudice to her and the factors discussed above does not merit severance.

  B.  *Defendant Leonard's Claim of Prejudicial Spillover*

  Next, Defendant Leonard claims that severance is warranted in this case as she will be prejudiced in a joint trial due to the fact that the evidence is stronger against her co-defendants. *See* Def. Leonard's Mot. for Severance at 3, ¶ 7. Importantly, "it is well-established that differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." *United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988) (citations and quotation marks omitted); *see also United States v. Eiland*, 406 F. Supp. 2d

9

46, 54 (D.D.C. 2005) (severance denied even though charges against co-conspirators included crimes of violence). Rather, "[t]he key to determining whether there should be a severance of defendants or offenses is whether or not the jury would be able to compartmentalize the evidence as it applies to different defendants and offenses." *Edelin*, 118 F. Supp. 2d at 44. "In considering a severance motion, it has been said that the primary consideration is whether the jury could reasonably be expected to compartmentalize the evidence as it relates to the separate defendants." *United States v. Wright-Barker*, 784 F.2d 161, 175 (3d Cir. 1986); *see also United States v. Alexander*, 982 F.2d 262, 266 (8th Cir. 1992) (holding that "prejudice exists where the jury was unable to 'compartmentalize the evidence'" as it related to the separate defendants).

While Leonard might consider the Government's evidence against her to be "thin," *see* Def. Leonard's Mot. for Severance at 3, ¶ 7, a review of the Government's proffered evidence indicates that significant evidence does at least support its theory of her complicity. For example, according to the Government, (1) Leonard admitted before a grand jury that she signed the FEGLI form as a witness to Mayo's signature when Mayo had not signed the form; (2) Mayo never signed the FEGLI form and that, in fact, her signature, along with the authorized agency official's, were forged; and (3) a $1,000 check was paid to Leonard's husband after Turner received his portion of the FEGLI benefits. *See* Gov't's Opp'n at 11. Given that Leonard is charged with a conspiracy in which she apparently played a vital part, the evidence against her is not so distinct, nor substantially less egregious, to warrant severance: presenting all the evidence together will not result in prejudice, nor will it confuse the jury about her relative level of culpability. *See Edelin*, 118 F. Supp. 2d at 43 ("Severance is not appropriate merely because some co-conspirators were more active in the conspiracy, nor because some co-conspirators played a more central role.") (citations omitted). As such, Leonard cannot establish that manifest prejudice would result due to the fact that evidence

against her would only be *de minimus* when compared to the evidence against her co-defendants. *See United States v. Gambrill*, 449 F.2d 1148, 1159 (D.C. Cir. 1971).

Moreover, there is ample reason why the preference for joint trials should be honored in this context. As described above, Leonard is charged in the conspiracy count, and the Government will seek to prove that her charged conduct was committed in furtherance of the overarching conspiracy. As such, the evidence of the conspiracy, and of her fellow co-defendants' alleged roles will therefore have to be admitted even in a separate trial, necessitating the repetitive presentation of the same witnesses and evidence at a second trial. While Leonard is not charged with bribery, unlike her co-defendants, the evidence regarding that charge is intertwined with the evidence regarding the overall conspiracy and relevant to Leonard's part in the plan. As such, the Government will utilize the same evidence and the same witnesses to establish each of the crimes charged in the Indictment. This Circuit has emphasized that where "[a]ll of the evidence admitted at [a] joint trial could properly have been admitted at a separate trial to show the nature of the . . . scheme in which [the defendant] was an active participant," no prejudice results from the joinder. *United States v. Gbemisola*, 225 F.3d 753, 761 (D.C. Cir. 2000).

Moreover, this case is not so complex that a jury could not compartmentalize the evidence presented to it. *Cf. Edelin*, 118 F. Supp. 2d at 44 (finding that case was not so complex that a jury would be unable to compartmentalize the evidence when it faced six co-defendants charged with, *inter alia*, a conspiracy to distribute cocaine, conspiracy to distribute heroin, RICO conspiracy, first degree murder while armed, assault with intent to murder while armed, assault with a dangerous weapon, use of a firearm, possession of a firearm during a crime of violence, possession of cocaine with intent to distribute, distribution of cocaine, unlawful use of a communication facility, possession with intent to distribute heroin, and a variety of continuing enterprise murder counts).

11

Additionally, the Court intends to carefully instruct the jury to consider the evidence as to each defendant and the jury's responsibility in determining the guilt or innocence of each of the different defendants on the basis of that evidence, thereby reducing any "spillover" concerns.  It is a widely accepted rule of law that juries follow their instructions.  *Richardson*, 481 U.S. at 211, 107 S.Ct. 1702 ("the almost invariable assumption of the law that jurors follow their instructions"); *see also Simmons*, --- F. Supp. 2d ----, 2006 WL 1217281, at *25 ("Other, less intrusive remedies such as additional jury instructions are preferred over severance.") .  In this situation, with the careful attention of this Court and the vigilance of counsel, the evidence will be compartmentalized and any prejudice to Defendant Leonard minimized or eliminated.

In sum, based on the present record, the Court – pursuant to its discretion and balancing the relevant factors – concludes that Defendant Leonard has not satisfied the heavy burden of establishing prejudice so severe as to constitute a miscarriage of justice.  Simply, Defendant Leonard has not established a prejudicial disparity of the evidence, nor has she met the requirements necessary to prove the need for and likelihood of a co-defendant's testimony on their behalf.  Rather, the Court believes, at this time, that limiting instructions and other less drastic measures may be employed to avoid any wrongful prejudice that may result during the trial.  *See Zafiro*, 506 U.S. at 539, 113 S.Ct. 933.  However, the Court recognizes that it has a continuing duty to monitor the appropriateness of joinder of counts and defendants.  *See Edelin*, 118 F. Supp. 2d at 40; *Schaffer v. United States*, 362 U.S. 511, 516, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960).  The Court further recognizes that it must continue to be vigilant for prejudice arising under Rule 14 of the Federal Rules of Criminal Procedure.  *Id.*

### III: CONCLUSION

For the reasons set forth above, the Court shall deny Defendant Leonard's Motion for

Severance at this time. An appropriate Order accompanies this Memorandum Opinion.


Date:   July 12, 2006

                                                                            */s/*
                                             COLLEEN KOLLAR-KOTELLY
                                             United States District Judge