IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 06-026 (CKK) |
| PETER R. TURNER, ) | |
| ) | |
| LATANYA ANDREWS, and ) | Government's Trial Memorandum |
| ) | |
| THELMA LEONARD, ) | |
|        Defendants. ) | |
| _____) | |

GOVERNMENT'S TRIAL MEMORANDUM

The United States of America, by and through its undersigned counsel, respectfully submits this memorandum concerning legal and evidentiary issues that may arise during the trial of this matter.

**I.     Status of the Case**

On January 31, 2006, a federal grand jury sitting in the District of Columbia indicted (i) defendants Turner, Andrews, and Leonard with one count of conspiracy in violation of 18 U.S.C. § 371; (ii) defendant Andrews with one count of bribery in violation of 18 U.S.C. § 201(b)(2)(A)-(B); and (iii) defendant Turner with one count of bribery in violation of 18 U.S.C. § 201(b)(1)(A)-(B).

On February 9, 2006, defendants Turner and Andrews were arraigned, and on February 16, 2006, defendant Leonard was arraigned. On February 16, 2006, each defendant waived his or her Speedy Trial right until April 6, 2006. On April 6, 2006, defendants Turner and Andrews were sworn and rejected the government's plea offers, and all defendants again waived their Speedy Trial rights until June 22, 2006.

On May 26, 2006, the government filed a pre-trial notice and motion to admit evidence under Fed R. Evid. 404(b), and on May 31, 2006, defendant Leonard filed motions to sever and to suppress statements. On July 12, 2006, this Court issued its orders denying the severance and suppression motions of defendant Leonard, as well as the government's pre-trial Rule 404(b) motion.

On July 7, 2006, the government filed its First Motion in Limine, requesting a ruling precluding the defense from presenting evidence or argument concerning defendant Turner or Leonard's apparent medical conditions.

A pre-trial status hearing is scheduled for July 19, 2006 at 9:00 a.m., and trial will commence July 24, 2006.

## II.    Status of Discovery

### A.    Fed. R. Crim. P. 16 Disclosures

The government has provided to the defendant all known discoverable items, most of it during the week of February 16, 2006, when the final defendant was arraigned. To date, no defendant has provided reciprocal discovery, with the exception of a clemency order provided by counsel for defendant Turner. (The government notes that it has been informed by counsel for defendant Andrews that she does not possess any discoverable items.) By way of this memorandum, the government requests that the Court order the remaining defendants to comply in a timely manner with their own Rule 16 obligations to the extent they may possess any discoverable items or information.

### B.    Brady, Giglio, and Jencks Disclosures

The government has provided the defendants with nearly all reports of witness interviews prepared by investigative agencies during the investigation of this matter. In addition, the government has provided the defendants with virtually all grand jury testimony, including all

grand jury testimony for those witnesses the government expects to call at trial. Although this production was made to ensure that the government complies with its <u>Brady</u> and <u>Giglio</u> obligations -- in the limited event such testimony and materials may be responsive -- and it certainly is not required at this stage of the proceedings by <u>Jencks</u>, it has effectively resulted in the disclosure to the defendants of nearly all witness statements, made in and outside of the grand jury, well in advance of trial. Any remaining <u>Jencks</u> materials will be provided prior to the government witnesses testimony.

### III.    Manner of Proof

The presentation of evidence will be both testimonial and documentary. The government anticipates calling witnesses who have first-hand knowledge of the operation and procedures of the Office of Personnel Management, the Federal Employees Group Life Insurance (FEGLI) Program it administers, and the Department of Veterans Affairs Medical Center (DVAMC) human resources and fiscal sections. The government intends to make use of summary charts and other demonstrative exhibits, which it will disclose to the defense and provide to the Court in advance of trial. A portion of the case will consist of business records and other documents. Among other items, these documents will include voluminous financial and telephone records. The government believes it is likely that it will obtain stipulations from the defense concerning the authenticity of those business records and the application to them of Fed. R. Evid. 803(6), which will preclude the necessity of calling custodians to testify to the authenticity and business records foundation for each set of records. Finally, the government will provide defense counsel with a draft exhibit list prior to trial, and will submit to the Court its witness list for the Court's review.

## IV. Anticipated Legal and Evidentiary Matters

The government respectfully invites the Court's attention to the following legal and evidentiary matters that may arise during the trial of this case.

### A. Application at Trial of the Law Concerning the FEGLI Program

To assist the Court in the trial of this matter, the government provides the following summary of the statute authorizing OPM's operation of the FEGLI Program, and asks that the Court take judicial notice of the statutory provisions that bear on the allegations in this case.

#### 1. Relevant Law

There are two sources of law governing the FEGLI Program: the statute creating the Program, which is codified at 5 U.S.C. §§ 8701-8716, and comprehensive regulations promulgated by OPM pursuant to the authority vested by that statute. See 5 C.F.R. §§ 870.801-870.1208; see also 48 C.F.R. §§ 2101-2152 (OPM regulations concerning FEGLI contract acquisition authority and rules).[1]

The FEGLI Act unambiguously provides that a designation of beneficiary form is invalid unless signed by the insured party herself. 5 U.S.C. § 8705(a). A form that does not comply with that requirement "has no force or effect." Id. Congress added the signature requirement as "an inflexible rule that a beneficiary form must be named in strict accordance with the statute, irrespective of the equities in a particular case." Metropolitan Life Ins. Co. v. Manning, 568 F.2d 922, 926 (2d Cir. 1977). Courts therefore strictly construe this signature requirement. See, e.g., Thomas v. Metropolitan Life Ins. Co., 921 F. Supp. 810, 811 (D.D.C. 1996) (holding change of beneficiary form legally invalid where insured printed his name and checked box indicating he had signed the form without actually signing it), aff'd, 111 F.3d 963 (D.C. Cir.

---

[1] OPM also maintains a website on the FEGLI Program, available at <http://www.opm.gov/insure/life/>.

4

1997) (table); accord Hightower v. Kirksey, 157 F.3d 529 (7th Cir. 1998) (holding designation of beneficiary form invalid where the insured left the "signature of the insured" line blank); Metropolitan Life Ins. Co. V. Sullivan, 897 F. Supp. 65 (E.D.N.Y. 1995) (holding that designation of beneficiary form completed by the decedent's brother, who had power of attorney, was invalid).

In addition, the statute recites the order of precedence in which benefits must be paid upon the death of an insured employee:

> First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office or . . . in the Office of Personnel Management. For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.
> Second, if there is no designated beneficiary, to the widow or widower of the employee.
> Third, if none of the above, to the child or children of the employee and descendants of deceased children by representation.
> Fourth, if none of the above, to the parents of the employee or the survivor of them.
> Fifth, if none of the above, to the duly appointed executor or administrator of the estate of the employee.
> Sixth, if none of the above, to other next of kin of the employee entitled under the laws of the domicile of the employee at the date of his death.

5 U.S.C. § 8705(a).

The Act also makes clear that administration and accountability for the FEGLI Program rests with OPM. As noted, the Act specifically provides that the "Office of Personnel Management may prescribe regulations necessary to carry out the purposes of this chapter." 5 U.S.C. § 8716(a). OPM can exclude certain classes of employees from coverage under the FEGLI Program. Id. § 8701(a)(C). The Act specifies that OPM is responsible for purchasing the policies of insurance, id. § 8709(a), and any such policy must provide automatic coverage for eligible employees. See id. § 8702(a). Thus, the statute requires OPM to become the "policyholder" for insurance contracts purchased for the covered employees pursuant to the Act.

5

See Kimble v. United States, 345 F.2d 951, 952 (D.C. Cir. 1965). OPM is charged as well with ensuring that every covered employee receives a certificate explaining the scope of coverage under the Program. Id. § 8703. Retired employees are permitted under the Act to file their designation of beneficiary forms directly with OPM. See id. §§ 8705(a), 8706(b). OPM is responsible for approving the notice regarding the termination date of benefits, and for setting the conditions by which FEGLI coverage may be extended or converted. Id. § 8706(a). OPM is further charged with determining the conditions by which reinsurance of policies issued under the Act may be obtained. Id. § 8710. OPM must confirm that premium rates for insurance are acceptable, and must conduct an annual accounting of policy rates. Id. §§ 8711-8712. Monthly deductions from insured employees' payroll are deposited in a fund used to pay policy premiums and to defray the expenses incurred by OPM "in the administration" of the FEGLI Program. Id. § 8714(a). Accordingly, review of the statute leaves no room for doubt that OPM is the agency charged with the governmental function of regulating, administering, and accounting for the FEGLI Program.

### 2.     Judicial Notice of Statutory Provisions

The Federal Rules of Evidence provide that, upon the request of a party or on its own motion, the Court may take judicial notice of an adjudicative fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). As the Supreme Court has explained, "It has been long settled, of course, that rules of Congress and its committees are judicially cognizable." Yellin v. United States, 374 U.S. 109, (1963) (citing cases); see, e.g., Marshall v. District of Columbia Government, 559 F.2d 726, 730 (D.C. Cir. 1977) (taking judicial notice of amendment of statute); In re Mora, 199 F.3d 1024, 1028 n.7 (9th Cir. 1999)

6

(taking judicial notice of postal regulation that was incorporated in the Code of Federal Regulations).

The government requests that during the trial of this case the Court take judicial notice of the following facts based on the statute, which are not subject to reasonable dispute: (i) the designation of beneficiary form at issue in this case would have been without force or effect unless it was actually signed by Vester Mayo herself, 5 U.S.C. § 8705(a); (ii) the order of precedence recited in the statute, id.; and (iii) the lawful governmental function of OPM includes regulating, administering, and accounting for the operation of the FEGLI Program, id. §§ 8701-8716.

### B.     Adverse Medical Condition of Witness

As a precaution, the government advises the Court that one of its civilian witnesses suffers from neurological medical conditions that may impair his ability to answer questions or maintain his attention and focus if he testifies without relief over a lengthy period. This witness is essential to the government's case. Rule 611 provides the Court with broad discretion over the mode and order of interrogation of witnesses and presentation of evidence. Accordingly, and only as may be necessary, the government may request that the Court permit it to ask leading questions during its direct or re-direct examination of the witness to assist in developing the witness's testimony for the jury. The government notes that it may also request short, unscheduled recesses during that witness's testimony should his apparent health warrant it. The government believes granting such relief would fall well within the Court's discretion under Fed. R. Evid. 611.

### C.    Defendants' Admissions

The government may introduce admissions made by the defendants. A defendant's statement is never considered hearsay when offered by the government. Fed. R. Evid. 801(d)(2)(A). Rather, the statement is an admission by a party opponent, and it does not require any special guarantee of trustworthiness. Unites States v. Singleterry, 29 F.3d 733, 736 (1st Cir. 1994). Rule 801(d)(2) "does not limit an admission to a statement against interest." United States v. Turner, 995 F.2d 1357, 1363 (6th Cir. 1993). In United States v. Slone, 833 F.2d 595, 601 (6th Cir. 1987), the court held that grand jury testimony was admissible as an admission. The Slone court referred to "the familiar rule of evidence that any statement by a party may be offered against him by his opponent." Id.

In this case, the three defendants made statements either to other witnesses, to federal criminal investigators and prosecutors, before the grand jury, or in documents that will be used at trial. All of these statements are admissible against them. Fed. R. Evid. 801(d)(2)(A). Further, admissions by co-conspirators that were made in furtherance of the conspiracy will also be admissible against all members of the conspiracy under Fed. R. Evid. 801(d)(2)(E). In this case, the government expects to present evidence of a continuing conspiracy whose methods and means included covering up the conspiracy. Accordingly, any threatening, false, or misleading statements made by a co-conspirator to witnesses, investigators, or the grand jury should be admissible against the other conspirators as Rule 801(d)(2)(E) statements in furtherance of the conspiracy.

### D.    Summary Testimony of Special Agent Shantel Robinson

Some of the relevant evidence in this case will involve a series of financial transactions drawn from voluminous bank records. To assist the jury in understanding this evidence, it is the intention of the government to elicit testimony that summarizes the records from Special Agent

8

Shantel Robinson, the case agent. Such testimony has been admitted in other trials. See, e.g., United States v. Johnson, 54 F.3d 1150, 1162 (4th Cir. 1995) (holding that the admission of summary testimony is discretionary, pursuant to Fed. R. Evid. 611(a)); Nichols v. Upjohn Co., 610 F.2d 293, 293-94 (5th Cir. 1980) (oral testimony of physician summarizing contents of 94,000 page F.D.A. new drug application pursuant to Fed. R. Evid. 1006). Special Agent Robinson will summarize the flows of money to and from a bank account of defendant Andrews. The government expects that the underlying records are either admissible or will be admitted in evidence, all of which were produced to all defendants shortly after their arraignment. For these reasons, the government respectfully requests that the Court permit the government to offer summary testimony through Special Agent Robinson pursuant to Fed. R. Evid. 611(a) and 1006.

### E.     Non-Exclusion of Case Agents and Expert Witness

The government plans to call Special Agent Shantel Robinson as a witness in its case-in-chief. The government also may call Special Agent Kim Lampkins as a witness in its case-in-chief. The agents should not be included in the Court's sequestration order under Fed. R. Evid. 615, because they are investigative agents designated as representatives of the government as provided for by the second exception made in that Rule. Further, the government intends to call a forensic handwriting expert as a witness in its case-in-chief. To date, no defendant has provided any notice or information concerning a potential defense expert witness, despite requests from the government. Accordingly, the government does not at this time request that its forensic handwriting expert be permitted to remain in the courtroom for the duration of trial. However, should the defense put on expert testimony or other evidence bearing on the expert's testimony, the government requests leave that its expert be permitted to remain, because the witness's role will include the need to analyze and respond to that evidence, if any. See United States v. Conners, 894 F.2d 987, 991 (8th Cir. 1990) (proper for case agent and expert witness to remain in

courtroom, where the witness's presence was essential to their testimony). In that event, the government's expert should not be sequestered pursuant to the third exception in Rule 615.

>    **F.   Evidence of Specific Acts of Good Behavior to Rebut
>         Evidence of Corrupt Intent**

It is well established that a defendant may not seek to establish his innocence through proof of non-criminal acts on specific occasions. United States v. Scarpa, 897 F.2d 63, 70 (2d Cir. 1990). Any attempt by the defendants to use specific instances of prior good conduct to try to establish lack of criminal intent is altogether improper. United States v. Williams, 205 F.3d 23, 34 (2d Cir. 2000) (evidence of "innocent travel" to Jamaica not relevant in defendant's drug importation trial). To the extent any defendant wishes to put on any evidence of relevant traits of good character, he or she should be permitted to do so only through reputation and opinion testimony of character witnesses as provided for under Rule 405(a).[2]

>    **G.   Electronic Presentation of Evidence**

The United States intends, with the Court's permission, to publish most of its documentary evidence during the trial to the jury electronically, using the presentation software called "Sanction." This software will allow the government to show the hard copies of the actual exhibits through computer screens in the courtroom. The use of this software will also allow the enlargement and marking of specific parts of the government's exhibits as visual aids to the jury. Pursuant to the Court's scheduling order, the government has contacted the courtroom technical administrator and has scheduled to meet with him in advance of trial.

---

[2] This is not a "character in issue" case in which Rule 405(b) would permit the defendant to present proof of specific instances of alleged good conduct. That Rule is limited to relatively rare circumstances, for example, "negligent entrustment" cases in which a plaintiff contends that a defendant was negligent in entrusting a dangerous instrumentality to a particular agent. In such a case, the trait of incompetence of the agent would be an element of the claim. See, e.g., In re Aircrash in Bali, Indonesia, 684 F.2d 1301, 1314-15 (9th Cir. 1982). No such situation is presented here.

**H.     Summary Exhibits, Enlargements, and Pedagogical Illustrations**

The government intends to use enlargements of original documents as evidence, and it also intends to use at least one pedagogical device during its argument and in its case-in-chief. The handwriting expert will also be testifying with the use of a chart she prepared based upon the handwriting exemplars she was provided for her analysis. The government will make its evidence summaries, enlargements, and illustrative charts available to the defense prior to trial upon the request of any defendant who wishes to examine those materials.

1.     <u>Summary Exhibits</u>

Rule 1006 of the Federal Rules of Evidence states, in pertinent part, that "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." Fed. R. Evid. 1006. The purpose of Rule 1006 is to allow the use of summaries when the documents are unmanageable or when the summaries would be useful to the judge and jury. <u>Davis & Cox v. Summa Corp.</u>, 751 F.2d 1507, 1516 (9th Cir. 1985). A chart or summary is admissible under Rule 1006 if the underlying materials upon which the chart or summary is based are themselves admissible in evidence and are available to the opposing party for inspection. <u>United States v. Winn</u>, 948 F.2d 145, 157-59 (5th Cir. 1991). A proper foundation for the summary exhibit will be made by establishing the admissibility of the underlying materials and the accuracy of the summary. <u>United States v. Kim</u>, 595 F.2d 755, 764 (D.C. Cir. 1979); <u>Needham v. White Laboratories, Inc.</u>, 639 F.2d 394, 403 (7th Cir. 1981). In this case, the United States intends to introduce straightforward summary exhibits comparing magnified copies of the signature portion of several admissible documents that contain questioned and known signatures. <u>Cf.</u> <u>United States v. Weaver</u>, 281 F.3d 228, 232-33 (D.C. Cir. 2002) (holding chart comparing payroll records for various employees at mail facility with dates of alleged losses at facility admissible under Fed. R. Evid. 1006).

### 2. Enlargements of Already Admitted Exhibits

The United States also will create poster-board sized enlargements of original documents that the government expects will be admitted into evidence. The government intends to offer those "blow-ups" into evidence. The proposed blow-ups include an enlarged copy of the allegedly forged designation of beneficiary form, as well as enlarged copies of several allegedly forged personal checks drawn on Vester Mayo's Bank of America account.

### 3. Pedagogical Devices or Illustrations

Pedagogical summaries or illustrations that clarify or simplify evidence or assist counsel in argument to the jury are permissible pursuant to Fed. R. Evid. 611(a). United States v. Bray, 139 F.3d 1104, 1111-12 (6th Cir. 1998). A pedagogical device may include information on a drawing, flip chart, summary, graph, or illustrative aids that:

> (1) is used to summarize or illustrate evidence, such as documents, recordings, or trial testimony, that has been admitted in evidence; (2) is itself not admitted into evidence; and (3) may reflect to some extent through captions or other organizational devices or descriptions, the inferences and conclusions drawn from the underlying evidence by the summary's proponent. This type of exhibit is 'more akin to argument than evidence' since [it] organize[s] the jury's examination of testimony and documents already admitted into evidence.

Id. at 1111 (citation omitted). These devices are generally not admitted as evidence, and the Court should give a limiting instruction "which informs the jury of the summary's purpose and that it does not constitute evidence." United States v. Paulino, 935 F.2d 739, 753 (6th Cir. 1991).

The government intends to use during argument at least one pedagogical illustration featuring some of the evidence that supports the government's contention that the designation of beneficiary form was forged and fraudulent. Accordingly, the government requests that the Court permit that use pursuant to Fed. R. Evid. 611(a) and instruct the jury that the device is not evidence, but is used as an illustrative aid.

**I.     Duplicates**

Many of the documents that the government intends to offer into evidence are photocopies of documents. Photocopies are admissible pursuant to Federal Rules of Evidence 1002 and 1003. The Federal Rules of Evidence provide that the original writing, recording, or photograph is not required. "A duplicate is admissible to the same extent as an original unless: (1) a genuine question is raised as to the authenticity of the original and (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed. R. Evid. 1003. In addition, in this forgery case the government will also offer the original of the allegedly forged designation of beneficiary form and other original documents bearing relevant known and questioned signatures exemplars.

CONCLUSION

Wherefore, premises considered, the government respectfully submits this memorandum in aid of the Court and requests that the Court rule in accordance with the foregoing should any of the anticipated evidentiary issues arise during trial.

Dated: July 16, 2006

                                  Respectfully submitted,

                                  BRENDA MORRIS,
                                  Acting Chief


                                  /s/
                                  Daniel A. Petalas
                                  DC Bar No. 467908
                                  Ann C. Brickley
                                  Trial Attorneys
                                  Public Integrity Section
                                  Criminal Division
                                  United States Department of Justice
                                  10th Street and Constitution Avenue, NW
                                  Washington, DC 20530
                                  202-514-1412
                                  202-514-3003 (facsimile)
                                  Dan.Petalas@usdoj.gov

CERTIFICATE OF SERVICE

The undersigned counsel for the government hereby certifies that he caused a true and correct copy of the foregoing to be served upon the following counsel of record by electronic mail at the addresses listed below through the automated electronic case filing system of the Court, this 16th day of July, 2006:

James W. Rudasill, Jr., Esq.
717 D. Street, NW, Suite 310
Washington, DC 20004
rudasilljr7@aol.com
Counsel for Peter R. Turner

Nathan I. Silver, Esq.
P.O. Box 5757
Bethesda, MD 20824
nisquire@aol.com
Counsel for LaTanya Andrews

Howard Katzoff, Esq.
717 D. Street, NW, Suite 310
Washington, DC 20004
katzoffh@aol.com
Counsel for Thelma Leonard

/s/
Daniel A. Petalas
Trial Attorney